IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re WALLACE REED BENNETT,<br><br>    Debtor.<br><br><br>WALLACE REED BENNETT,<br><br>    Appellant,<br><br><br>    vs.<br><br><br>THE SOCIETY OF LLOYD'S,<br><br>    Appellee. | MEMORANDUM DECISION AND ORDER AFFIRMING BANKRUPTCY COURT AND GRANTING MOTION FOR SANCTIONS FOR FILING A FRIVOLOUS APPEAL<br><br><br><br><br>Case No. 2:07-CV-736 TS |

## I.  INTRODUCTION

Attorney David Bennett appeals the Bankruptcy Judge's imposition of a $23,305.50 award of attorney fees against him as a sanction for having filed a frivolous Adversary Proceeding against the Society of LLoyd's (LLoyd's) in his father/client's bankruptcy case. The Bankruptcy Judge held any reasonable attorney should have known the arguments raised in the Adversary Proceedings were barred by res judicata.  The Court finds no error in the Bankruptcy Court's Sanctions Order and affirms.  The Court also finds this is a

frivolous appeal and, therefore, grants LLoyd's Motion under Fed. R. Bankr. P. 8020 for an award of fees incurred as a result of this appeal.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Wallace R. Bennett's troubles began when he signed a General Undertaking contract with an English organization, LLoyd's, as a "Name" providing underwriting capital for insurance syndicates.  The nature and structure of LLoyd's as an insurance market, the syndicates that underwrite insurance in that market, and the passive investor role played by the Names, are fully explained in Judge Campbell's 2002 Summary Judgment Order[1] as well as the subsequent Tenth Circuit case, *Society of LLoyd's v. Reinhart.*[2]  A brief summary of how LLoyd's operated, Wallace E. Bennett's involvement, and the court actions that ensued is necessary to understand the Bankruptcy Judge's imposition of sanctions.

For Wallace R. Bennett, several things combined to be disastrous about his involvement with LLoyd's.  First, as an insurance underwriter, a Name such as Wallace R. Bennett was exposed to potentially ruinous financial liability.  Second, the Names never dealt directly with LLoyd's or its Managing Agents; instead the Names were represented

---

[1]Rec. at 799-802; *Soc'y of LLoyd's v. Bennett*, 2:02-CV-204 TC at 1-4 (D. Utah November 12, 2002)  (Order granting LLoyd's summary judgment and denying Wallace R. Bennett's Motion for Summary Judgment) (2002 Summary Judgment Order).

[2]402 F.3d 982, 988-89 (10th Cir. 2005).  In *Reinhart*, the Tenth Circuit acknowledged its background section was heavily borrowed from "the detailed and well-reasoned opinion" in *Soc'y of LLoyd's v. Webb*, 156 F. Supp. 2d 632, 636 (N.D. Tex. 2001).  *Id*. at 988.  In turn, this Court heavily borrows from the background facts as set forth in Judge Campbell's 2002 Summary Judgment Order, *Webb*, *Reinhart*, and the Ninth's Circuit's case *Richards v. Lloyds*, 135 F.3d 1289, 1289 (9th Cir. 1998).

by Member Agents and are part of the separate syndicates[3] that each Name chooses to join.[4]  Third, the General Undertaking contains forum selection and choice of law clauses that dictate that English law applies to any dispute arising from the Names' membership and participation, and that any such dispute can only be resolved in the "courts of England." Fourth, by signing the General Undertaking, the Names agreed to "abide with LLoyd's bylaws and controlling parliamentary acts."[5]

At the time Wallace R. Bennett signed the General Undertaking, LLoyd's knew, but failed to disclose to the Names it was recruiting in the United States, that it was facing massive losses.  In anticipation of the losses, LLoyd's had lobbied Parliament and obtained passage of a new law giving "LLoyd's and its governing body extraordinary by-law making powers."[6]

Eventually, the anticipated losses materialized and Names from the United States attempted to sue LLoyd's for fraud in the United States.  Six Hundred Names, including Wallace R. Bennett, filed an action in California (collectively the *Richards*[7] case) seeking to avoid the forum selection and choice of law clauses.  The Ninth Circuit held that the

---

[3]"A syndicate is a group of Names.  Their pooled resources serve as reserves and permit Lloyds to underwrite risks and issue insurance policies." *Webb*, 156 F. Supp. 2d at 634.

[4]*Richards*, 135 F.3d at 1289.

[5]*Webb*, 156 F. Supp. 2d at 634.

[6]*Id*. (discussing LLoyd's Act of 1982).

[7]135 F.3d 1289.

Names could not void the choice of law and venue selection clauses.[8]  It also held that the Names had adequate recourse against LLoyd's in the English courts for their fraud and other claims.[9]  All other courts of appeal to address the issue also found the forum selection and choice of law clauses could not be avoided.[10]  Wallace R. Bennett was a plaintiff in the *Richards* case, but did not join in the appeal.  David Bennett did not represent him in the *Richards* case.

Back in England, some of the Names sued LLoyd's for negligence and obtained a £1 Billion damages award.  Wallace R. Bennett did not join in the English action against LLoyd's.  The LLoyd's Counsel responded to the negligence judgment by using its new and extraordinary powers under the Act and by-laws to freeze LLoyd's funds, appoint LLoyd's as trustee of its own frozen funds, and force a reorganization of the various syndicates' losses into a single reinsurance company called Equitas.  Equitas then converted the losses into mandatory premiums owed by the Names to Equitas.  The new Equitas reinsurance contract,[11] required the Names to pay their Equitas premiums,[12] but at the

---

[8]*Id.* at 1294-95 (affirming trial court and finding that choice of law and choice of forum clauses in international agreements could not be voided by antiwaiver provisions of federal securities law, RICO, or by allegations of fraud going to the contract as a whole).

[9]*Id.* at 1296, n.6 (noting the Names have recourse against their syndicates' Member and Managing Agents in England, but also noting that it is "truly unfortunate" that the Member and Managing Agents may be insolvent).

[10]*Id.* (collecting cases enforcing the choice clauses, including *Riley v. Kinglsey Underwriting Agencies, Ltd.*, 969 F.2d 953 (10th Cir. 1992)).

[11]Appointed substitute agents signed the Equitas contract on behalf of Wallace R. Bennett and other Names.  *Reinhart*, 402 F.3d at 990.  As explained in *Webb*, this extraordinary turn of events resulted from LLoyd's wielding its recently granted power

same time the "Names were precluded from asserting claims they might have against LLoyd's or others as a set-off or counterclaim to their Equitas premium."[13]  This provision was dubbed the "pay-now, sue-later provision."[14]  However, as clarified by an English court, the "pay-now, sue-later" clause's "*effect is and only is to insulate*, as a matter of procedure, claims for the premium from counterclaims or set-offs asserted by the reinsured.  It neither excludes *nor necessarily postpones* such cross-claims."[15]  Thus, the Names remained able to sue LLoyd's and its related entities, but only if they did so in separate actions in England,[16] and not as counterclaims or defenses to the LLoyd's actions against them based on the Equitas premiums.[17]

LLoyd's then settled with some Names, paid the Equitas premiums for the non-settling Names, and received an assignment of Equitas's claims against the non-settling

---

under the by-laws: "LLoyds used its by-law powers from the LLoyds Act of 1982 to appoint a Substitute Agent. This Substitute Agent was instructed to sign the Equitas contract on behalf of the Names who refused to sign the Equitas settlement." *Webb*, 156 F. Supp. 2d at 636.

[12]As dryly noted by the *Webb* court, "Lloyd's set the Equitas premium of individual Names in a manner known only to it."  *Id*. at 636.

[13]*Reinhart*, 402 F.3d at 990.

[14]*Id.*

[15]*Webb*, 156 F. Supp. 2d at 637 (quoting English court) (emphasis added).

[16]*Reinhart*, 402 F.3d at 1000 (noting district court had found Names were free to pursue claims against LLoyd's in England in separate actions and finding Names had full and fair opportunity to litigate claims in English courts).

[17]*Reinhart*, 402 F.3d at 991 (noting that the English Court that entered judgment against the Names found the pay-now, sue-later clause precluded Names from asserting fraud claims as a set-off to their Equitas premiums).

Names.[18]  LLoyd's next sued Wallace R. Bennett and the other non-settling Names in English courts to recover the amounts it had paid for the non-settling Names' Equitas premiums.  The English courts entered large judgments in favor of LLoyd's and against Wallace R. Bennett and the other Names.  LLoyd's soon sought to enforce its foreign judgment against Wallace R. Bennett and other Names in this district (the Utah District Court Action).[19]

Thus, as result of two decade's worth of elaborate machinations that included obtaining passage of a special Act of Parliament, creating the Equitas reinsurance company and settlement agreement, and wielding the extraordinary powers under its by-laws—and aided by its original labyrinth method of organizing the Names as underwriting syndicates—LLoyd's ensured it remained contractually entitled to full payment from the Names.  Simultaneously, LLoyd's ensured that the Names' only recourse was to bring separate suits in England against LLoyd's—which had frozen its assets—or against the Managing Agents and Members—mostly insolvent entities.

It was in this context that David Bennett began to represent his father as Wallace R. Bennet opposed LLoyd's attempt to enforce its foreign judgment in the Utah District

---

[18]Apparently only five percent of the Names refused to accept the Equitas settlement.  2002 Summary Judgment Order at 4; *see also Reinhart*, 402 F.3d at 997 (noting ninety-five percent of the Names accepted the Equitas contract).

[19]*Soc'y of LLoyd's v. Bennett*, 2:02-CV-204 TC. *See also Webb*, 156 F. Supp.  2d at 636, 644 (finding Webb was a non-settling Name who had been afforded due process; and, in the alternative, finding that even if English courts did not afford him due process, he had "waived due process rights by signing the General Undertaking and failing to participate in available procedures" in England).

Court Action.[20]   The Utah District Court Action was decided in favor of LLoyd's and against Wallace R. Bennett and the other Utah Names by the 2002 Summary Judgment Order. Wallace R. Bennett, acting pro se, filed a Motion to Alter or Amend the 2002 Summary Judgment Order.  He argued, among other things, that the Order did not take into account evidence of an alleged offset in the amount of £334,000.[21]  He argued that he first learned of this amount on August 9, 2002, via a letter dated August 2, 2002.  He acknowledged that this claim was owed to him by an entity other than LLoyd's, namely Rose Thomson Young Limited (RTY), the Managing Agent of an insurance syndicate of which he was a member.

The £334,000 claim was awarded to him in RTY's English insolvency proceeding. However, Wallace R. Bennett argued that his claim against RTY should have been applied as an offset or deduction against LLoyd's judgment against him because LLoyd's should be vicariously liable for the RTY's debts under theories of agency and/or respondeat superior.  He argued that Utah law should apply to his position that his claim against RTY should be offset[22] against LLoyd's claim against him.

---

[20]At various times, Wallace R. Bennett was also represented by another attorney/son who is not involved in this appeal.

[21]Rec. at 511.  The offset consists of Wallace R. Bennett's £334,000 claim against RTY minus the £531.80 amount he received on that claim through the RTY insolvency proceedings in England.

[22]Wallace R. Bennett and David Bennett refer to this claim as the Offset even though the claim that LLoyd's should be vicariously liable for RTY's debt has not been determined.  An offset has been explained as follows: "The right of setoff (also called "offset") allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (quoting *Studley v.*

The Motion to Alter or Amend was denied, judgment in favor of LLoyd's was subsequently entered, and Wallace R. Bennett, himself an attorney, appealed pro se. Despite Wallace R. Bennett's pro se status, David Bennett testified in the evidentiary portion of the Bankruptcy Judge's Rule 9011 proceedings that he had represented Wallace R. Bennett before the Tenth Circuit and also assisted his father in filing a petition for certiorari to the United States Supreme Court.[23]

Wallace R. Bennett's appeal was consolidated with the appeals of other Names from Utah and New Mexico in the *Reinhart* case.[24]  In that appeal, Wallace R. Bennett again argued LLoyd's should be vicariously liable for the RTY claim and, therefore, the amount of that claim should be offset against LLoyd's judgment.  The Tenth Circuit determined that forum selection and choice of law clauses were enforceable and determined that LLoyd's English judgments against the Utah names should be enforced. The Tenth Circuit affirmed the rulings in the Utah District Court case on all issues except that of post-judgment interest.  Regarding Wallace R. Bennett's claims, the Tenth Circuit held:

> To the extent that Lloyds raises res judicata and collateral estoppel as affirmative defenses with respect to Mr. Bennett's arguments against the enforcement of the choices of law and forum, these matters are addressed in *Richards*, . . ., and we hold such claims are precluded.[25]

---

*Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)).

[23]Rec. at 999.

[24]402 F.3d 982.

[25]*Reinhart*, 402 F.3d at 990 n.1.

The Tenth Circuit specifically addressed and rejected some of Wallace R. Bennett's defenses and then found all of his remaining claims were "without merit."[26]  Among the specifically rejected claims was his claim for discovery on the amount of the English judgment.[27]

In the meantime, Wallace R. Bennett filed for bankruptcy.[28]  In the bankruptcy forum, Wallace R. Bennett again sought to impose vicariously liability against LLoyd's for the RTY claim and to offset that amount against LLoyd's judgment.  He brought these claims by means of an adversary proceeding[29] (the First Adversary Proceeding) filed by his attorneys, one of whom was David Bennett.  The First Adversary Proceeding also involved several other issues.

LLoyd's moved to dismiss the First Adversary Proceeding as barred by res judicata, collateral estoppel, and law of the case.  LLoyd's also filed a motion for sanctions under Fed. R. Bankr. P. 9011, the Bankruptcy counterpart to Fed. R. Civ. P. 11.  In response, Wallace R. Bennett stipulated to the dismissal of the First Adversary Proceeding.

Less than six months later, on November 7, 2006, David Bennett filed a second adversary proceeding (Second Adversary Proceeding) against LLoyd's on behalf of

---

[26]*Id.* at 1003.

[27]*Id*. at 1000-01 (finding discovery on amount of liability to be unnecessary where the issue of the amount of alleged English Judgment had been litigated before the English courts).

[28]He filed for relief under the bankruptcy laws on December 2, 2004, during the pendency of the *Reinhart* appeal.

[29]An adversary proceeding is a separate lawsuit filed under the auspices of the bankruptcy case. *See* Fed. R. Bankr. P. 7001, et seq.

Wallace R. Bennett.[30]  This Second Adversary Proceeding again "primarily [sought] an offset of £334,000"[31] against LLoyd's judgment in the Utah District Court Action.[32]  It sought a ruling that LLoyd's is vicariously liable for the RTY claim;[33] argued that Utah law applied to his attempted set-off;[34] and argued that Wallace R. Bennett was entitled to an accounting from LLoyd's back to the date of his initial investment in 1979.[35]

LLoyd's filed a Motion to Dismiss or for Summary Judgment on the grounds of res judicata and law of the case.[36]  LLoyd's also served David Bennet with a motion under Fed. R. Bankr. P. 9011 for filing the Second Adversary Proceeding and allowing him an opportunity to dismiss the Second Adversary Proceeding.  When the Second Adversary Proceeding was not dismissed, LLoyd's filed its Rule 9011 Motion against David Bennett.

The Bankruptcy Judge held a hearing on the Summary Judgment Motion and on the Motion for Sanctions and granted both motions, finding the issue of forum selection was previously determined and that, under res judicata, that ruling was binding in the

---

[30]Rec. at 378-390 (Complaint in Second Adversary Proceeding).

[31]*Id*. at ¶¶ 2, 10.

[32]*Id*. at ¶ 16.

[33]*Id*. at ¶¶ 3, 44.

[34]*Id*. at n.6.

[35]*Id*. at ¶ 16.

[36]LLoyd's argued that the Bankruptcy Court had already considered and rejected Wallace R. Bennett's offset claim in earlier proceedings in the bankruptcy case.

bankruptcy court.[37]   Wallace R. Bennett appealed the merits of the Bankruptcy Judge's Summary Judgment ruling.   That appeal on the merits of the Bankruptcy Judge's res judicata ruling was subsequently affirmed (First Appeal).[38]

On the Rule 9011 Motion, the Bankruptcy Judge held an evidentiary hearing, heard David Bennett's testimony, and made detailed findings of fact.[39]   Among other things, the Bankruptcy Judge found that David Bennett represented Wallace R. Bennett in the Federal District Court Action, that the enforcement of the forum selection clause had been raised and decided in that action, that David Bennett helped in the appeal of that action, and that the forum selection clause issue was finally determined in that appeal.   The Bankruptcy Judge also found that in arguing against summary judgment in the Second Adversary Proceeding, David Bennett argued the same case law that he had previously relied on in the Utah District Court Action and in the *Reinhart* appeal.   He further found:

> David Bennett has advanced legal arguments and claims against LLoyd's in this adversary proceeding which are not warranted by existing law, and are frivolous in light of prior rulings of other courts in matters to which Wallace R. Bennett was a party and thus barred under the doctrine of res judicata; and . . . [finds] further that sanctions are warranted for effective deterrence.[40]

Finally, the Bankruptcy Judge imposed sanctions in the amount of $23,305.50. David Bennett does not contest the amount of the sanctions.

―――――――――――――

[37]Rec. at 965-67.

[38]*Bennett v. LLoyds*, 2:07-CV-441 DAK Amended Memorandum Decision and Order affirming Bankruptcy Court (D. Utah January 15, 2008).

[39]Rec. at 1,011-17.

[40]Rec. at 1,076 (Order Granting Sanctions Against Attorney David Bennett).

III.  DISCUSSION AND CONCLUSION

A.   Appeal of Sanctions Order

The Court finds it has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) and (c)(1)(B).

"Rulings under Fed. R. Civ. P. 11 are authoritative in cases involving Bankruptcy Rule 9011."[41]  In considering the appeal of the Bankruptcy Judge's Sanctions Order, this Court applies "an abuse-of-discretion standard in reviewing 'all aspects' of a Rule 11 determination."[42]

Fed. R. Bankr. P. 9011, "which is derived from Fed. R. Civ. P. 11,"[43] provides:

(a) Signature. Every . . ., pleading, . . . shall be signed by at least one attorney of record in the attorney's individual name.

(b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a . . . pleading, . . . , an attorney . . .  is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-

* * *

(2) the claims, . . . , and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

* * *

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon

---

[41]*In re Rex Montis Silver Co*.,  87 F.3d 435, 437 (10th Cir. 1996); *In re Cascade Energy & Metals Corp*., 87 F.3d 1146, 1150 (10th Cir. 1996).

[42]*Rex Montis Silver*, 87 F.3d at 439 (quoting *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 405 (1990)).

[43]*Id*. at 438.

the attorneys, . . . that have violated subdivision (b) or are responsible for the violation.

In determining whether the Rule 9011 sanctions are warranted, a "court must apply an objective standard; it must determine whether a reasonable and competent attorney would believe in the merit of an argument."[44]

> A good faith belief in the merit of an argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances.  In addition, it is not sufficient for an offending attorney to allege that a competent attorney could have made a colorable claim based on the facts and law at issue; the offending attorney must actually present a colorable claim.[45]

David Bennett argues that sanctions were improperly awarded for the following reasons: First, because the Bankruptcy Judge improperly imposed an "existing law" standard when he was seeking a "modification of existing law."  Second, he argues res judicata could not apply because the issue of the offset had not been previously litigated in the current procedural posture–satisfaction of the LLoyd's claim which he argues was condition precedent under the pay-now, sue-later clause. Third, he argues he should not be sanctioned because he proffered nonfrivolous arguments for the modification of a forum selection clause under Supreme Court authority.

---

[44]*Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir. 1991) (applying Rule 11).

[45]*White v. Gen. Motors Corp., Inc.*,  908 F.2d 675, 680 (10th Cir. 1990) (internal citation omitted).

LLoyd's argues that the record supports the Bankruptcy Judge's findings and there is no showing of an abuse of discretion. LLoyd's also moves for sanctions on the grounds that this is a frivolous appeal.

In reviewing the Bankruptcy Judge's sanctions award, the Court finds no abuse of discretion. The Court finds that the Bankruptcy Judge applied the correct standard. David Bennett argues that the Bankruptcy Court should have applied the "modification of existing law" provision of Rule 9011. However, David Bennett does not point in the record to where he argued for a modification of existing law. Instead he argues he was seeking modification *of an existing forum selection clause*,[46] under newly established facts.[47] Thus, rather than arguing for a modification of existing law, he was arguing for a modification of the prior Court's ruling on the factual merits of his challenge to the forum section clause —a litigation position barred by res judicata.

David Bennett next argues that it was not frivolous to argue that the forum selection clause should not apply to the offset claim in the Second Adversary Proceeding because that clause should not have been determined until the condition precedent to suit under the pay-now, sue-later clause—payment in full of LLoyd's claim—had been satisfied.[48] The Court finds this argument to be itself frivolous because the forum selection clause was raised, argued, and finally determined in court actions as to LLoyd's and Wallace R.

---

[46]App. Br. at 15; Reply Br. at 21; *see also* App. Br. at 12-13; Reply Br. at 2, 19 (advancing same argument with slightly different wording).

[47]Reply Br. at 16.

[48]The parties dispute whether the judgment is satisfied.

14

Bennett long before the purported payment of the LLoyd's judgment.  Similarly, the offset

was raised and argued by Wallace R. Bennett in the same appeal where it was determined

that (1) the ruling in *Richards* precluded Wallace R. Bennett's arguments against the

enforcement of the choices of law and forum selection clauses, and (2) that LLoyd's

English judgment would be enforced in its full amount.[49]

Next, David Bennett argues that he should not be sanctioned because he proffered

nonfrivolous arguments for the modification of a forum selection clause under Supreme

Court authority in the Second Adversary Proceeding.  This Court agrees with the

Bankruptcy Judge that this is a frivolous argument in light of prior rulings by other courts.

David Bennett cannot avoid the prior rulings on the merits of the enforceability of the

clause between his client and LLoyd's by couching his argument as merely seeking a

"modification" of the forum selection clause.

David Bennett also contends that the Bankruptcy Judge erred in sanctioning him for

filing the Second Adversary Proceeding because he was arguing for application of an

exception to forum selection clauses discussed in *Carnival Cruise Lines, Inc. v. Shute*.[50]

In *Carnival Cruise Lines*, the court of appeals had ruled that a forum selection clause

should not be enforced where the litigants were "physically and financially incapable of

---

[49]Satisfaction of the judgment is not a condition precedent to the filing of suit against LLoyd's because the English courts held that the pay-now, sue-later clause did not require that suit be postponed, only that suit be brought separately against LLoyd's. *See* 2002 Summary Judgment Order, at 12 (citing English case construing pay-now, sue-later clause as leaving the Names free to pursue claims of fraud in separate proceedings).

[50]499 U.S. 585 (1990).

pursuing litigation" in the mandated forum because it  would "deprive litigants of their day in court."[51]   The Supreme Court rejected this position on the facts of the case because (1) there was no evidence in record to support the contention that the litigants were physically and financially incapable of pursuing litigation in Florida and (2) the appellate court relied on a statement from a prior case that was not placed in its proper context.[52]  Instead, the Supreme Court examined "form passage contract" for fundamental fairness and addressed such issues as whether the dispute was essentially a local one,  whether there was notice of the clause, and whether there was fraud or overreaching in obtaining assent to the clause.[53]

The Tenth Circuit has previously considered the *Carnival Cruise Lines* exception for serious inconvenience of the contractual forum in connection with LLoyd's forum selection clause in *Riley*, when the Tenth Circuit held enforcement would not deprive the plaintiff of his day in court where English courts provided a fair and neutral forum.[54]

David Bennett contends that under *Carnival Cruise Lines*, the issue of enforceability of the forum selection clause due to hardship on the litigant should be made at the time of

---

[51]*Id.* at 594 (admiralty case).

[52]*Id.* at 594 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 7 (1972)).

[53]*Id.* at 594-95.

[54]696 F.2d at 595 (rejecting argument that *Carnival Cruise Lines* exception applied to LLoyd's Enrollment Agreement's forum selection clause). *Riley* did not involve assertions of health or financial condition as reasons for avoiding the clause.

filing the action,[55] which he argues was the time of filing the Second Adversary Proceeding.

On the facts of this case, the Court finds this is a frivolous argument because the time of filing action wherein Wallace R. Bennett challenged the enforcement of the forum selection clause was when he filed his challenges resulting in the *Richards* opinion and when LLoyd's filed the Utah District Court Action that resulted in the full enforcement of LLoyd's English judgment despite the offset argument. Significantly, as explained above, the issue of the offset was raised in the Utah District Court Action before its entry of judgment, and was again raised in the *Reinhart* appeal.

David Bennett also argues he should not have been sanctioned because this appeal raised issues of erroneous application of law and fact because he proffered "new facts" by an affidavit regarding his client's health, financial condition,[56] and unequal bargaining power.[57] This is a frivolous argument because, as discussed above, the claim that LLoyd's judgment should be reduced by the offset is subject to res judicata. Similarly, the claims for an accounting to establish the amount of the LLoyd's judgment, the application of Utah law, and the claim of unequal bargaining power were rejected as a grounds for not

---

[55]Docket No. 15, Appellant's Opp. to Motion for Sanctions for Frivolous Appeal, at 2 (arguing that the *Carnival Cruise Lines* exception is like the determination of diversity of citizenship and, therefore, should be made as of the date of filing suit).

[56]Rec. at 969-71 (March 30, 2007 Wallace R. Bennett Aff.) (explaining poor health and financial conditions and also asserting that LLoyd's contract was one of adhesion and unequal bargaining power).

[57]Rec. at 615-18, (January 22, 2007 Wallace R. Bennett Aff.) (addressing challenge to merits of LLoyd's judgment and, at ¶ 12, asserting LLoyd's had "overriding power").

enforcing the LLoyd's forum selection clause in *Reinhart*.[58]   David Bennett submits no case law for his position that a subsequent change in the personal circumstances of a litigant means that his or her claims do not continue to be barred by res judicata.

Thus, this Court agrees with the Bankruptcy Judge that the issue of attorney sanctions did not turn on the merits of the application of the forum selection clause, but on whether res judicata applied to bar Wallace R. Bennett from again litigating issues.[59]  Two federal courts of appeal have ruled that David Bennett's client cannot avoid the forum selection clause.  In one of those cases, his client unsuccessfully argued the offset against the attempted full enforcement of the LLoyd's judgment.  Thus, these matters were  finally decided long before David Bennett filed the Second Adversary Proceeding.

Finally, the Court notes that David Bennett's main position in this appeal appears to be that it was reasonable to continue to pursue the merits of the offset because res judicata cannot apply to a claim that has never been determined on its merits by a Utah court.  Again, the Court finds this to be a frivolous argument.  The court rulings enforcing the forum selection clause necessarily preclude consideration of the merits of the claims that must be determined in another forum.  The same is true of the offset and accounting arguments as grounds for not enforcing LLoyd's foreign judgment.

---

[58]402 F.3d at 996-97 (holding Names did not establish LLoyd's judgment unenforceable as based on unconscionable contract under New Mexico law ).

[59]Rec. at 1,015.

18

David Bennett's efforts to help his father, and his position on LLoyd's behavior—behavior the Tenth Circuit remarked was "distinctly distasteful" in several aspects[60]—are understandable.  However, his arguments against enforcement of the forum selection clause and his argument that LLoyd's foreign judgment should be reduced by the amount of the RTY £334,000 claim, were raised by and resolved against his father in *Reinhart*. David Bennett helped his father seek an appeal of that case to the United States Supreme Court.  When the Supreme Court denied Wallace R. Bennett's Petition for a Writ of Certiorari,[61] those matters were finally resolved.  No reasonable attorney could believe otherwise.  Yet, David Bennett filed the Second Adversary Proceeding against LLoyd's, seeking to litigate these issues anew in yet another non-contractual forum.   Losing attorneys are not expected to like adverse rulings, but, as attorneys, they must accept the res judicata effect or face sanctions for continuing to pursue barred claims.  The record clearly establishes the Bankruptcy Judge did not abuse its discretion in awarding sanctions against David Bennett under Rule 9011.

---

[60]*Id*. at 992-93.

[61]*Bennett v. Soc'y of LLoyd's,*  546 U.S. 826 (2005).

B.   Motion Under Fed. R. Bankr. P. 8020

The Court next turns to LLoyd's Motion for Sanctions, or more accurately, damages[62] for the filing of this appeal.  Fed. R. Bankr. P. 8020 provides: "If a district court . . . determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion . . . and reasonable opportunity to respond, award just *damages* and single or double costs to the appellee."[63]  Because Rule 8020 is closely patterned on Fed. R. App. P. 38, the Court applies case law interpreting Rule 38 when considering imposing sanction under Rule 8020.[64]  Applying Fed. R. App. P. 38 case law to the present motion: "An appeal is considered frivolous when the result is obvious, or the appellant's arguments of error are wholly without merit."[65]

David Bennett argues filing this appeal is not frivolous.  He argues that he should not be sanctioned for filing this appeal because he raised an important basis for the appeal—errors of law and fact. He again concentrates on the purported merits of the alleged offset, the merits of the forum selection clause, and his *Carnival Cruise Lines* argument.  This is nothing more than a rehash of the arguments rejected as frivolous by the Bankruptcy Court.  For the reasons stated above, this Court finds that the arguments

---

[62]Fed. R. Bankr. P. 9011 provides for sanctions, but Fed. R. Bankr. P. 8020, like Fed. R. App. P. 38, provides for damages.

[63]Fed. R. BAnkr. P. 8020 (emphasis added).

[64]*See* Rule 8020 advisory committee's note (stating "the authority to award damages and costs in connection with frivolous appeals is the same for district courts sitting as appellate courts, bankruptcy appellate panels, and courts of appeals").

[65]*Melea, Ltd. v. Jawer SA,* 511 F.3d 1060, 1071 (10th Cir. 2007) (quoting *F.D.I.C. v. McGlamery*, 74 F.3d 218, 222 (10th Cir. 1996)).

20

raised in the appeal of the sanctions order are frivolous.  The Bankruptcy Judge's award of sanctions is so clearly supported by the record that this was a meritless appeal and no reasonable attorney could think otherwise.  Accordingly, the Court finds that the filing of this appeal is frivolous within the meaning of Fed. R. Bankr. P. 8020.  The Court finds that damages should be awarded.  The Court finds that an appropriate award of just damages is an amount equal to LLoyd's reasonable attorney fees incurred in defending this appeal.

### IV.  CONCLUSION

This appeal illustrates how repetitive litigation benefits no one.[66]   The Bankruptcy Court awarded a sanction of attorney fees against attorney David Bennett for the costs incurred in defending claims clearly barred by res judicata as well as to deter further such filings.  The Court finds no abuse of discretion and affirms.  Upon review of the entire record in this appeal, the Court further finds that this is a frivolous appeal.  Accordingly, the Court grants LLoyd's Motion for an award of attorney fees as damages to compensate it for the costs incurred in defending this frivolous appeal.  It is therefore

ORDERED that the Bankruptcy Court's award of sanctions against David Bennett is AFFIRMED and this case shall be closed forthwith.  It is further

ORDERED that LLoyd's Motion for Sanction for Frivolous Appeal (Docket No. 13) is GRANTED.  It is further

---

[66]*See Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000) (holding the "fundamental policies underlying the doctrine of res judicata (or claim preclusion) are finality, judicail economy, preventing repetive litigation and forum-shopping, and the interest in bringing litigation to an end.") (quotation omitted).

21

ORDERED that within twenty days from the entry of this Order LLoyd's shall file its itemization of its attorney fees incurred in defending this frivolous appeal.  Said itemization shall be accompanied by an affidavit of counsel setting forth the scope of the effort, the number of hours expended, the hourly rates claimed, and any other pertinent information. David Bennett shall file any response no later than twenty days from the filing of the itemization.

DATED   September 24, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge

22